UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-23896-CIV-MARTINEZ/GOODMAN

ROBERTO JEUDINE,

    Plaintiff,

v.

CITY OF HOMESTEAD, FLORIDA,
THOMAS SURMAN, VIVIAN
MANACH, and DENNIS MAYTAN,

    Defendants.
_____/

## ORDER ON MOTION FOR SANCTIONS AND TO DISQUALIFY COUNSEL

United States District Judge Jose E. Martinez referred [ECF No. 77] to the Undersigned Plaintiff's Motion for Sanctions and to Disqualify Counsel (the "Motion") [ECF No. 69] against Defendants' counsel Eric Stettin. The Undersigned has reviewed the Motion, Defendants' response in opposition [ECF No. 72], Plaintiff's reply [ECF No. 74], Defendants' sur-reply [ECF No. 87], and the abundant exhibits submitted on the record, as well as held oral argument on the Motion [ECF No. 89]. For the reasons set forth below, the Undersigned **denies** Plaintiff's Motion.[1]

---

[1]     A United States Magistrate Judge has the authority to enter an **order** denying sanctions (as opposed to a report and recommendations). *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 683 n. 2 (S.D. Fla. 2012). Additionally, an order on the disqualification of counsel is a non-case dispositive matter that may be handled by a magistrate judge as a pretrial duty under 28 U.S.C. § 636(b)(1)(A). *Estate of Jones v. Beverly Health & Rehab. Servs., Inc.*, 68 F. Supp. 2d 1304 (N.D. Fla. 1999). *See also Advanced*

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Roberto Jeudine filed a federal court lawsuit in this district against the City of Homestead (the "City") in 2013 (the "First Case"), alleging an unlawful, racially-motivated termination from his job with the City. (Case No. 13-23307-CIV-JEM). Specifically, the City terminated Plaintiff from his job because it contended that Plaintiff hit another employee's vehicle while driving a City vehicle and failed to report it, apparently because there were no witnesses. Plaintiff denied causing the collision and denied the City's allegation. Plaintiff was arrested, but the charges were dismissed.

The District Court dismissed the lawsuit without prejudice. Slightly more than a year after the First Case was filed (and approximately a month after the lawsuit was dismissed), Plaintiff filed a *second* lawsuit against the City (the "Second Case"). This lawsuit added new claims against the City and also added several individual Defendants. These individual Defendants are represented by the same counsel who represented the City in the First Case and who represents all Defendants in the current case -- Attorneys Alan Fertel, Eric Stettin, Alison Smith and Joanna Doerful, all from the Weiss Serota Helfman Cole Bierman & Popok, P.L. law firm.

---

*Mfg. Tech., Inc. v. Motorola, Inc.*, No. CIV99–01219PHXMHMLOA, 2002 WL 1446953, *1 n. 1 (D. Ariz. July 2, 2002) ("A magistrate judge's lawful authority to rule on a disqualification motion falls within the 'pretrial duties' or 'additional duties' delegated to magistrate judges under the Federal Magistrates Act.").

On August 27, 2013, Plaintiff and his wife, Michelange Jeudine, (collectively, the "Debtors") filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. *In re Roberto Jeudine & Michelange Jeudine* (*In re Jeudine*), No. 13-30330-AJC, ECF No. 1 (Bankr. S.D. Fla. Aug. 27, 2013). Debtors were represented by private bankruptcy counsel, Matthew Mazur Jr., and the Chapter 7 Trustee, Ross Hartog (the "Trustee"), was represented by Zach Shelosmith. *In re Jeudine*, No. 13-30330-AJC (Bankr. S.D. Fla. 2013). On March 11, 2014, Attorney Kelsay Patterson was appointed "Special Counsel for Trustee" for the purpose of prosecuting Plaintiff's claim in this case. *In re Jeudine*, No. 13-30330-AJC, ECF No. 41 (Bankr. S.D. Fla. Mar. 11, 2014).

In March of 2015, defense counsel Eric Stettin became aware of the bankruptcy petition, which still remained open. [ECF No. 72-1, pp. 1-2]. Stettin thereafter contacted the Trustee's counsel, Shelosmith, to discuss the matter. [*Id.*, at pp. 2-3]. Stettin and Shelosmith negotiated a settlement of $7,500 on April 3, 2015. [*Id.*, at. p. 4]. Defendants filed a Notice of Settlement in the District Court on that day. [ECF No. 59]. The Trustee filed a Motion to Terminate Special Counsel on April 5, 2015, citing "irreconcilable differences" and alleging, among other things, that Patterson did not timely advise the Trustee of significant events in the case. *In re Jeudine*, No. 13-30330-AJC, ECF No. 72 (Bankr. S.D. Fla. Apr. 5, 2015). The District Court entered an order administratively closing this case and denying all pending motions as moot on April 7, 2015. [ECF No.

3

67]. The Trustee filed a Motion to Approve Settlement with the Bankruptcy Court on April 8, 2015. *In re Jeudine*, No. 13-30330-AJC, ECF No. 78 (Bankr. S.D. Fla. Apr. 8, 2015).

A hearing was held before the Bankruptcy Court on May 5, 2015, and Judge Jay Cristol denied the Motion to Approve Settlement without prejudice and granted in part the Motion to Terminate Special Counsel.[2] *In re Jeudine*, No. 13-30330-AJC, ECF No. 100 (Bankr. S.D. Fla. July 23, 2015) (transcript of May 5, 2015 hearing). Patterson, however, remained counsel for Plaintiff in this case because Judge Cristol's ruling required the Trustee to pay him his attorney's fees if he were to be terminated. *In re Jeudine*, No. 13-30330-AJC, ECF No. 88 (Bankr. S.D. Fla. May 13, 2015). In October of 2015, Debtors, the Trustee and Patterson reached a compromise whereby Plaintiff's claim was re-purchased by Plaintiff with 50% of any proceeds from the claim to be paid to the Trustee. *In re Jeudine*, No. 13-30330-AJC, ECF No. 106 (Bankr. S.D. Fla. October 28, 2015).

After Defendants noticed the settlement that had been negotiated between Stettin (on behalf of Defendants) and Shelosmith (on behalf of the Trustee), Patterson (on

---

[2] At the February 4, 2016 hearing before the Undersigned [ECF No. 89], Patterson argued that Judge Cristol did not approve the settlement because he had held a negative impression of the negotiation because it excluded Patterson. The Undersigned has reviewed the entire transcript of that hearing [ECF No. 91-1] and now understands that Judge Cristol's on-the-record comments focused almost exclusively on the dollar amount of the proposed settlement ,rather than the identities of the attorneys involved in the negotiations. Judge Cristol made one brief, offhand comment about the settlement communications and Patterson's non-involvement in them, but that was hardly the focus of the hearing.

behalf of Plaintiff) filed the present Motion for Disqualification and Sanctions Against Defendants' Counsel. [ECF No. 69].

## II.  APPLICABLE LEGAL PRINCIPLES AND ANALYSIS

Plaintiff asserts violations of Florida Rule of Professional Conduct 4-4.1 (concerning truthfulness to others), 4-4.2 (concerning direct communication with a represented party), and 4-8.4 (regarding engaging in dishonesty, fraud or deceit or knowingly violating the rules or assisting others with violating the rules). [*Id.*]. The underlying theory of Plaintiff's motion is (1) that Defendants' counsel (specifically Stettin) made numerous false statements (and engaged in other professional misconduct) to reach the settlement agreement; and (2) that Stettin improperly negotiated the settlement with Shelosmith rather than with Patterson. Plaintiff alleges that this alleged professional misconduct requires the Court to impose the severe penalties of disqualifying Defendants' counsel and imposing other sanctions under the Court's inherent authority.

For the reasons outlined below, the Undersigned denies the motion because Plaintiff has not met his burden of proving the violation of any rules of professional conduct, and therefore, the imposition of disqualification and further sanctions is inappropriate.

"Disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest—a remedy that should be employed only sparingly."

*First Impressions Design & Mgmt. Inc. v. All That Style Interiors Inc.*, 122 F. Supp. 2d 1352, 1354-55 (S.D. Fla. 2000) (noting that "disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest - a remedy that should be employed only sparingly"). "The party bringing the motion to disqualify bears the burden of proving grounds for disqualification." *Hermann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (citing *In re Bellsouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)).

A client's choice of counsel is entitled to "substantial deference," and "any movant seeking to sever that relationship through disqualification must meet a high standard of proof." *Fenik v. One Water Place*, No. 3:06cv514/RV/EMT, 2007 WL 527997, at *4 (N.D. Fla., Feb. 14, 2007). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *Id.*

"When a motion to disqualify is based on an allegation of ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power." *Suchite v. Kleppin*, 784 F. Supp. 2d 1343, 1344 (S.D. Fla. 2011) (internal quotations omitted). "The court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule in order to disqualify the attorney." *Id.* "An order involving the disqualification of counsel must be tested against the standards imposed by the [Florida Bar] Rules of Professional Conduct." *Id.* at 1346 (citing *Estright*

6

*v. Bay Point Improvement Ass'n, Inc.*, 921 So.2d 810, 811 (Fla. 1st DCA 2006); quoting *Morse v. Clark*, 890 So.2d 496, 497 (Fla. 5th DCA 2004)).

In addition to seeking disqualification for the alleged violations of these rules of professional conduct, Plaintiff also seeks sanctions pursuant the Court's inherent authority.[3] Federal courts have inherent power to impose sanctions for conduct that threatens the integrity of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). A court must fashion a sanction that not only punishes the wrongdoer but also deters future misconduct. *Belak v. American Eagle, Inc.*, No. 99-3524-CIV, 2001 WL 253608, at *5 (S.D. Fla. Mar. 12, 2001). The court's arsenal of sanctions includes a dismissal of the case and the assessment of attorney's fees. *Id.* (citing *Chambers*, 501 U.S. at 45).

"The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). The threshold of bad faith under a court's inherent power "is at least as high as the threshold of bad faith conduct for sanctions

---

[3] Plaintiff does not specify the legal authority under which he seeks sanctions (e.g., Federal Rule 11, 28 U.S.C. § 1927, etc.). Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 clearly does not fit the nature of Plaintiff's accusations, so the Court will not use this as a basis for analysis. Additionally, Federal Rule 11 includes a "safe harbor" provision whereby the movant must first serve the motion on opposing counsel to allow for the alleged conduct to be corrected before filing the motion with the Court. Plaintiff does not certify that this provision was complied with here. Accordingly, it appears that Plaintiff is seeking sanctions under the Court's inherent authority.

under 28 U.S.C. § 1927." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1252. Courts should exercise this power with restraint and discretion. *See Chambers*, 501 U.S. at 43.

Plaintiff's primary complaint relates to the effort by Defendants (through Stettin) to settle Plaintiff's claim for a nominal dollar amount by negotiating directly with the Trustee's counsel to the exclusion of special counsel, Patterson.

First, Plaintiff accuses Stettin of directly contacting represented parties such as the Trustee in violation of Florida Rule of Professional Conduct 4-4.2. [ECF No. 69, p. 5]. However, there is no evidence to support this accusation. In fact, the evidence that has been presented is to the contrary. For instance, the affidavit from Stettin explicitly states that he communicated directly with "Trustee's Attorneys" and "[a]t no time . . . communicated directly with Trustee Ross Hartog or with Roberto Jeudine[.]" [ECF No. 72-1, pp. 2-3]. Plaintiff presents no evidence, beyond the bare accusations in the motion, to contradict this statement. Rather, Plaintiff's only evidence to support this accusation, an exhibit titled "Exhibit ex parte communications from stettin to client" [ECF No. 75-3], is an email chain of communications between Stettin and the Trustee's **attorneys** -- not communications with either the Trustee or Plaintiff personally.

Second, beyond this accusation of improper communication, Plaintiff's primary issue boils down to whether it was unethical for Stettin to contact Trustee's counsel without *also* contacting special counsel (Patterson and Wendell Locke), given that

8

special counsel were intimately involved in litigating this lawsuit. In fact, Plaintiff filed a Florida Bar complaint against Stettin concerning this very issue.[4]

The Florida Bar investigated Plaintiff's complaint and ultimately concluded that "[t]here is insufficient evidence . . . that Mr. Stettin has violated any of the rules adopted by the Supreme Court of Florida which govern attorney discipline." [ECF No. 87-1, p. 2]. In that decision, the Florida Bar stated that "Mr. Stettin's contact with Mr. Shelosmith about the civil litigation and his client's willingness to discuss a nominal settlement was perfectly appropriate." [*Id.*, at p. 1]. The Florida Bar explained that when a petitioner files for Chapter 7 bankruptcy, a trustee is appointed and any pre-petition causes of action belong to the trustee who can settle or sell those claims in his discretion, in order to pay creditors. [*Id.*]. Thus, it is entirely appropriate from an ethical standpoint for Defendants (through Stettin) to have contacted representatives of the Trustee to negotiate a settlement in this case. The Undersigned adopts this same analysis.

Plaintiff has not called to the Court's attention any legal authority which would classify Stettin's settlement negotiation with the Trustee's counsel as unethical, unprofessional or in any way inappropriate.

---

[4] It appears as though Plaintiff, through his counsel, Patterson, who filed the motion, prematurely disclosed the Florida Bar investigation of Stettin before the investigation was concluded by mentioning the existence of the grievance in the reply memorandum [ECF No. 74, p. 2]. However, with the sur-reply memorandum filed after the investigation was complete, Defendants included a copy of the Florida Bar's letter closing that investigation. [ECF No. 87-1].

9

Of course, nothing *prevented* Stettin from contacting special counsel and, in retrospect, it may well have been a good idea to have done so. However, it appears as though Stettin had his reasons for wanting to deal only with the Trustee's counsel. First, there appears to be a history of bad blood between Stettin's law firm and Patterson's law firm. Second, it appears as though Patterson and Locke did not timely advise Trustee's counsel that they had filed the Second Case. [ECF No. 75-4, pp. 15-16]. Furthermore, Shelosmith sent an email to Debtors' bankruptcy counsel, Mazur, describing Patterson as having "gone 'rogue'" [*Id.*, at p. 15], and likewise advised Judge Cristol of this at the bankruptcy hearing [ECF No. 91-1, p. 7].

Nonetheless, Stettin's actions do not constitute sanctionable conduct and there is no factual or legal basis to disqualify Stettin's firm merely because they contacted an attorney they were allowed to contact for settlement discussion purposes.

Additionally, Plaintiff's argument ignores the critical point that **the Trustee's counsel could have, himself, contacted Patterson and Locke to discuss the settlement offer from Stettin.** After all, it was the Trustee who retained them as special counsel and for whatever reasons, the Trustee's counsel also did not find it necessary to discuss the settlement offer with the very lawyers the Trustee retained. Therefore, in practical terms, Patterson is, in effect, accusing his own client -- the Trustee -- of also acting inappropriately. Again, however, Plaintiff offers no legal basis for concluding that any unethical conduct occurred.

Beyond this unfounded primary accusation, Plaintiff also accuses Stettin of falsely advising Trustee's counsel that Judge Martinez was going to hold a hearing on Defendants' summary judgment motion on April 6, 2015. [ECF No. 69, p. 3]. Although Plaintiff has submitted an email from Shelosmith to Debtors' bankruptcy counsel, Mazur, mentioning -- incorrectly -- this supposed April 6 hearing [ECF No. 75-4, p. 16], Shelosmith later submitted an affidavit explaining that there had been a miscommunication and that the information provided was actually concerning an April 6 *deadline* for filing a summary judgment motion [ECF No. 72-8]. Furthermore, Stettin submitted a declaration representing that he never communicated to the Trustee personally and likewise never told Trustee's counsel that there was a hearing on April 6. [ECF No. 72-1].

At the hearing before the Undersigned, special counsel suggested that Stettin and Shelosmith are now covering up, implicitly accusing both of them of committing perjury. [ECF No. 89]. Patterson presents no proof of this however, and even Locke conceded the possibility that an email incorrectly describing April 6 as a hearing date rather than a filing deadline had been mistakenly sent [*Id.*]. I am not prepared to disqualify or sanction counsel based on speculation contradicted by sworn statements.

Accordingly, for the above reasons, the Undersigned denies Plaintiff's motion to disqualify counsel and for sanctions. The Undersigned understands that Patterson and Locke may feel excluded, but the decision to not include them in settlement negotiations is not an ethical violation or grounds for sanctions.

**DONE AND ORDERED** in Chambers, at Miami, Florida, March 9, 2016.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
The Honorable Jose E. Martinez
All Counsel of Record